UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal No. 19-cr-00013-WMW-DTS |
| | ) | |
| BRETT PALKOWITSCH, | ) | Hon. Wilhelmina M. Wright |
| Defendant. | ) | United States District Judge |

## GOVERNMENT'S POSITION ON SENTENCING

The United States of America, by and through the undersigned attorneys, hereby submits its position on the sentencing of Defendant Brett Palkowitsch, which is scheduled for April 4, 2020. The United States respectfully asks the Court to adopt the factual findings and advisory Guidelines calculations in the final pre-sentence report, and to sentence Defendant Palkowitsch to 87 months of imprisonment, the low end of his Guideline range. A Guideline sentence of 87 months of imprisonment is sufficient, but not greater than necessary, to promote the purposes of sentencing, 18 U.S.C. § 3553, because it would appropriately account for (1) the seriousness of civil rights violations; (2) the aggravating factors that make Defendant Palkowitsch's civil rights violation particularly serious; (3) the special need for general deterrence in this context; and (4) the interest in promoting sentence uniformity.

### I.    PROCEDURAL HISTORY

The Indictment charged Brett Palkowitsch, a St. Paul police officer, with a single count of depriving arrestee F.B. of his Fourth Amendment right to be free from unreasonable force by a police officer, in violation of 18 U.S.C. § 242. (Doc. No. 1). The Indictment alleged, more specifically, that the Defendant "repeatedly kicked F.B. while F.B. was on the ground and a police canine was biting F.B."; that the offense "involved the use of a dangerous weapon" (the

1

Defendant's shod foot); and that Defendant's kicks "resulted in bodily injury to F.B." (several broken ribs and two collapsed lungs). Id.  On November 26, 2019, after a nine-day trial, the jury returned a guilty verdict. (Doc. No. 100).

The Court set a sentencing date of April 4, 2020. (Doc. No. 113).  The Probation Department conducted a pre-sentence investigation, filed a preliminary pre-sentence report ("Preliminary PSR") on January 9, 2020, and gave notice to the parties that any objections would be due by January 23, 2020. (Doc. Nos. 117, 118).  The United States filed a response stating that the United States agreed with the Preliminary PSR's proposed factual findings and Guidelines calculations. (Doc. No. 120).  Defendant Palkowitsch sent a 12-page letter response to the Probation Department lodging several objections to the Preliminary PSR's proposed factual findings and Guidelines calculations. See Exhibit A.  On February 12, 2020, the Probation Department filed the final pre-sentence report ("PSR") and issued a notice stating that pleadings setting forth the parties' respective positions regarding sentencing are due by February 26, 2020.

## II.    OFFENSE CONDUCT

The United States incorporates by reference the summary of offense conduct in the PSR. Doc. No. 125, ¶¶ 4–15.  The United States respectfully requests that the Court adopt the factual findings set forth in that summary.

The United States disagrees with Defendant Palkowitsch's objections to the Preliminary PSR's summary of offense conduct, see Exhibit A, and agrees with the Probation Department's response that, "The Court presided over the trial and is in the best position to assess the accuracy and objectivity of the Offense Conduct in the report." (Doc. No. 125 at A.5).  At sentencing, the United States will be prepared to address Defendant Palkowitsch's proposed deletions, additions, and other edits—none of which affects his Guideline range—if the Court deems it necessary.

**III.     SENTENCING GUIDELINES CALCULATION**

The table below reflects the Probation Department's Guidelines calculations for Defendant Palkowitsch's sentence.

| | | |
|---|---|---|
| § 2H1.1(a)(1)→ § 2A2.2(a) | Base Offense Level | 14 |
| § 2A2.2(b)(2)(B) | Use of a Dangerous Weapon | + 4 |
| § 2A2.2(b)(3)(B) | Victim Sustained Serious Bodily Injury | + 5 |
| § 2H1.1(b)(1) | Committed Under Color of Law | + 6 |
| | Total Offense Level | 29 |
| § 4A1.1 | Criminal History Category | I |
| | Guideline Range | 87–108 months |

The United States agrees, in every respect, with the Probation Department's calculation of Defendant Palkowitsch's Guideline range. It is the same calculation the undersigned prosecutors provided to defense counsel, nine months before trial, for the purpose of plea negotiations. See Exhibit B (email to defense counsel, dated February 1, 2019, stating, in pertinent part: "Attached is a chart reflecting that, according to our calculations, your client's Guidelines range if he were convicted after trial would be 87–108 months of imprisonment.").

In his letter responding to the Preliminary PSR, Defendant Palkowitsch objects to the Probation Department's calculation of his Guideline range on five grounds. He argues: (1) that Defendant Palkowitsch "qualifies for and should receive" a two-level acceptance-of-responsibility adjustment, under U.S.S.G. § 4E1.1(a); (2) that applying the cross-reference to § 2A2.2, the guideline for aggravated assault, is "misguided" and violates the rule of lenity; (3) that applying specific offense characteristics from § 2A2.2 and § 2H1.1 "amounts to double counting"; (4) that a four-level increase for moderate bodily injury, rather than a five-level increase for serious bodily injury, should be applied; and (5) that the dangerous weapon enhancement is unwarranted. See Exhibit A.

3

For the following reasons, each of those objections should be overruled.

First, the acceptance-of-responsibility adjustment would be inappropriate in this case (1) because that "adjustment is not intended to apply to a defendant," like Defendant Palkowitsch, "who puts the government to its burden of proof at trial by denying the essential factual elements of guilt [and] is convicted" after a trial; (2) because this case is not one of the "rare exceptions" to that rule in which a defendant acknowledges his factual guilt but proceeds to trial in order to preserve a legal challenge; and (3) because, although Defendant Palkowitsch has admitted to kicking Mr. Baker, he has never admitted to intentionally using excessive force against Mr. Baker, his true offense conduct. U.S.S.G. § 3E1.1 application notes. For each of these reasons, Defendant Palkowitsch is ineligible for an acceptance-of-responsibility adjustment.

Second, the application of § 2H1.1(a)(1)'s cross-reference to § 2A2.2, the guideline for aggravated assault, is appropriate (1) because Defendant Palkowitsch's offense conduct—kicking Mr. Baker three times in the ribs with his shod foot, resulting in seven broken ribs and two collapsed lungs—straightforwardly fits within the Guidelines definition of "aggravated assault": it was "a felonious assault that involved . . . serious bodily injury," U.S.S.G. § 2A2.2 application notes; and (2) because the "plain language of § 2H1.1 directs a court to apply the sentencing guideline applicable to the underlying offense (here, aggravated assault) if it would produce a greater base offense level than the base offense level premised solely on § 2H1.1," United States v. Cozzi, 613 F.3d 725, 733 (7th Cir. 2010). The Eighth Circuit has upheld the application of the aggravated assault cross-reference in two excessive force prosecutions like this one. See United States v. Boone, 110 F. Supp. 3d 909, 916 (S.D. Iowa 2015), aff'd 828 F.3d 705 (8th Cir. 2016); United States v. Dautovic, 763 F.3d 927, 932 (8th Cir. 2014). Because there is no ambiguity,

much less "grievous ambiguity or uncertainty," the rule of lenity does not apply. United States v. Golden, 669 F.3d 901, 903 (8th Cir. 2012).

Third, the application of specific-offense characteristics from both sections—specifically, the § 2A2.2 enhancements for "serious bodily injury" and use of a "dangerous weapon," and the § 2H1.1 "public official/color of law" enhancement—is the proper interpretation of the Guidelines and does not result in double counting. The plain language of § 2H1.1(a)(1)'s cross-reference directs a court to apply "the offense level"—not the *base offense level*—"from the offense guideline applicable to any underlying offense." Confirming that interpretation, the Guidelines provision entitled, "Interpretation of References to Other Offense Guidelines," provides: "An instruction to use the offense level from another offense guideline refers to the offense level from the entire offense guideline (i.e., the base offense level, specific offense characteristics, cross references, and special instructions)." U.S.S.G. § 1B1.5(b)(1). In this case, the applicable offense guideline is aggravated assault, for the reasons already stated, and the offense level for that guideline is calculated by adding the base offense level (14) to the applicable specific offense characteristics (+4 for dangerous weapon and +5 for serious bodily injury). The resulting number (23) is then added to § 2H1.1's specific offense characteristic (+6 for public official/color of law) to arrive at a total offense level of 29. The district courts in Boone and Dautovic—the Eighth Circuit excessive force prosecutions referenced in the preceding paragraph—applied specific offense characteristics from both sections, and, in both cases, the Eighth Circuit found no error in the Guidelines calculations. See Boone, 110 F. Supp. 3d at 916, aff'd 828 F.3d 705; Dautovic, 763 F.3d at 932.

Fourth, a five-level enhancement for "serious bodily injury" is warranted, under § 2A2.2(b)(3)(B), because the injuries that Defendant Palkowitsch inflicted on Mr. Baker—seven

5

broken ribs and two collapsed lungs—satisfy each of the alternative definitions of "serious bodily injury" under the Guidelines.  As Mr. Baker and Dr. Nelson testified, those injuries (1) caused Mr. Baker "extreme physical pain"; (2) resulted in "the protracted impairment of a function of a bodily . . .  organ" (his lungs, which remain impaired to this day); and (3) "require[ed] medical intervention such as surgery" (the bilateral chest tube thoracostomies) and "hospitalization" at Regions Hospital. U.S.S.G. § 1B1.1 application notes (defining "serious bodily injury").  For those reasons, Mr. Baker's injuries satisfy the Guidelines definition of "serious bodily injury." United States v. Wilson, 686 F.3d 868, 869, 873–74 (8th Cir. 2012) (affirming application of the "serious bodily injury" enhancement, in the context of an excessive force prosecution, where the victim suffered a fractured bone in addition to cuts and bruises).

Fifth, a four-level enhancement for use of a dangerous weapon is warranted, under § 2A2.2(b)(2)(B), (1) because Defendant Palkowitsch acknowledged on cross-examination that he was wearing boots when he kicked Mr. Baker three times in the ribs; (2) because boots meet the Guidelines definition of "dangerous weapon," as they are "capable of inflicting death or serious bodily injury" if used kick someone; and (3) because the case law makes clear that where, as here, a defendant kicks a victim while wearing boots, the "dangerous weapon" enhancement applies. See United States v. Dunnaway, 88 F.3d 617, 619 (8th Cir. 1996) (affirming district court's application of dangerous weapon enhancement, under § 2A2.2(b)(2)(B), on the basis that the defendants used "their boots as dangerous weapons during the assault"); United States v. Serrata, 425 F.3d 886, 910 (10th Cir. 2005) (ruling, in § 242 prosecution for excessive force, that "the district court correctly considered the [defendant's] boots to be dangerous weapons" under § 2A2.2(b)(2)(B)); United States v. Hickman, 766 F. App'x 240, 247 (6th Cir. 2019) (unpublished) (ruling, in § 242 prosecution for excessive force, that defendant-officer's "boot was a dangerous

6

weapon for purposes of the four-level enhancement under § 2A2.2(b)(2)(B)"); United States v. Velasco, 855 F.3d 691, 694 (5th Cir. 2017) (affirming district court's judgment that "the shoes Velasco used to 'stomp' [the victim's] head against the 'solid prison floor'" qualified as "dangerous weapons" under § 2A2.2(b)(2)(B)); United States v. Villela-Alberto, 285 F. App'x 98, 101 (4th Cir. 2008) (affirming district court's judgment that the defendant's "prison-issued hard-toed boots," which he used to kick the victim, qualified as "dangerous weapons" under § 2A2.2(b)(2)(B)).

For the foregoing reasons, this Court should reject Defendant Palkowitsch's five objections and should adopt the PSR's Guidelines calculations, which result in a Guideline range of 87 to 108 months of imprisonment.

## IV. GOVERNMENT'S SENTENCING RECOMMENDATION

The United States respectfully submits that a Guideline sentence of 87 months of imprisonment, the low end of Defendant Palkowitsch's Guideline range, is sufficient, but not greater than necessary, to promote the purposes of sentencing. 18 U.S.C. § 3553. Specifically, a Guideline sentence of 87 months of imprisonment would appropriately account for (1) the seriousness of civil rights violations; (2) the aggravating factors that make Defendant Palkowitsch's civil rights violation particularly serious; (3) the special need for general deterrence in this context; and (4) the interest in promoting sentence uniformity.

First, a Guideline sentence of 87 months of imprisonment would "make explicit that the excessive use of force by law enforcement is a serious civil rights violation that simply will not be tolerated." United States v. Boone, 110 F. Supp. 3d 909, 919 (S.D. Iowa 2015), aff'd 828 F.3d 705 (8th Cir. 2015). As the Supreme Court has emphasized, "Public officials convicted of violating § 242 have done more than engage in serious criminal conduct; they have done so under color of the law they have sworn to uphold." Koon v. United States, 518 U.S. 81 (1996). "The seriousness

7

of section 242 crimes simply cannot be understated, as they harm far more than individual victims; society as a whole is harmed when those entrusted to protect the public and enforce the laws turn to lawlessness themselves." Id. at 917; see also United States v. Rodella, No. CR 14-2783 JB, 2015 WL 711941, at *50 (D.N.M. Feb. 5, 2015) (unpublished) ("A law enforcement officer's violation of the law is not comparable to an ordinary criminal's violation. Civil rights crimes go to the core of our system and endanger the entire structure of our government and are a threat to the republic."). If civil rights crimes are not taken seriously and punished appropriately, disproportionally affected groups are left with the impression that their rights do not matter and that law enforcement officers will continue to violate their rights with impunity.

Second, a Guideline sentence of 87 months of imprisonment would account for the aggravating factors that make Defendant Palkowitsch's civil rights violation particularly serious:

- Severity of injuries. Defendant Palkowitsch inflicted serious injuries to Frank Baker—seven broken ribs and two collapsed lungs—injuries that, as the treating physician testified, were potentially fatal, and injuries that, as Mr. Baker testified, still bother him to this day. That is an aggravating factor the Court should consider in imposing sentence. See United States v. Dautovic, 763 F.3d 927, 935 (8th Cir. 2014) (noting that the officer's "infliction of serious injury" was an "aggravating factor" the district court did not appropriately factor into the officer's sentence).

- Bragging. Defendant Palkowitsch bragged to other officers about inflicting those injuries. When he returned to the police station, officers heard him brag that his third kick, "got that fucker good" and that he could hear Mr. Baker's ribs break. Defendant Palkowitsch continued to brag about his use of force even after Officers Spencer and Dick confronted him about the severity of Mr. Baker's injuries. Later that evening, Defendant Palkowitsch texted Officer Rachelle Erickson a photograph of Mr. Baker lying on a hospital bed, and boasted to her that he had broken Mr. Baker's ribs. That Defendant Palkowitsch was proud of his actions and bragged openly about seriously injuring an innocent man is an aggravating factor the Court should consider in imposing sentence. See United States v. Smith, 860 F.3d 508, 516 (7th Cir. 2017) (overturning district court's below-Guidelines sentence for police officer convicted of excessive force, reasoning that the sentence failed to account for several aggravating factors, including that the defendant-officer "bragged about his behavior and mocked his fellow officers when they questioned his actions").

- - Obstruction. It is the position of the United States that Defendant Palkowitsch attempted to cover up his use of excessive force by lying in an official police report and by doubling down on those lies during his sworn testimony at trial. The specific false statements and material omissions were addressed in detail at trial during Defendant Palkowitsch's cross examination as well as during closing argument. Although a two-level obstruction enhancement under U.S.S.G. § 3C1.1 arguably would be justified under the circumstances, the United States is not asking the Court to impose that enhancement, which would increase Defendant Palkowitsch's Guideline range to 108–135 months of imprisonment; rather, the United States respectfully submits that the Court should consider Defendant Palkowitsch's false statements and false testimony as another reason to impose a Guideline sentence. United States v. Felicianosoto, 934 F.3d 783, 788 (8th Cir. 2019) (noting that "the district court identified several factors that led it to apply a sentence at the top of the Guidelines range, including Felicianosoto's perjurious statements and his refusal to accept responsibility for his offenses," and explaining that "[t]hese are permissible factors for the court to consider when imposing a sentence").

  - Collateral damage. Defendant Palkowitsch's use of excessive force inflicted considerable damage beyond Frank Baker's broken ribs and collapsed lungs; his actions upended the careers of the officers who reported him and who were retaliated against for doing so, "damage[d] the reputation of [law enforcement] officers generally," and "impugn[ed] the credibility and work of the hundreds of upstanding officers" who do their job with distinction at the St. Paul Police Department. See United States v. Boone, 110 F. Supp. 3d 909, 917 (S.D. Iowa 2015). The collateral damage wrought by Defendant Palkowitsch's use of excessive force and subsequent obstruction is an aggravating factor the Court should consider in imposing sentence.

  - Lack of remorse. As St. Paul Police Chief Todd Axtell testified at trial, one of the most glaring aspects of his disciplinary meeting with Defendant Palkowitsch was Defendant Palkowitsch's lack of remorse and refusal to admit that he had done anything wrong. As Chief Axtell documented in Defendant Palkowitsch's subsequent termination letter: "During our meeting on November 3, 2016, you stated that you were, 'sorry for the circumstance' but you accepted no responsibility for your decisions or actions. You displayed no remorse or compassion for the innocent arrested man who received substantial and life changing injuries." See Exhibit C. At trial, Defendant Palkowitsch again denied that he had done anything wrong. Defendant Palkowitsch's lack of remorse and refusal to take responsibility for his actions is an aggravating factor the Court should consider in imposing sentence. United States v. French, 719 F.3d 1002, 1009 (8th Cir. 2013) (noting that district court properly factored into the defendant's sentence that he "demonstrated a lack of remorse and an unwillingness to take responsibility for his actions").

These five aggravating factors make Defendant Palkowitsch's offense particularly serious and deserving of a serious Guideline sentence.

Third, a Guideline sentence of 87 months of imprisonment would appropriately account for the importance of general deterrence in this context. "General deterrence … is one of the key purposes of sentencing," United States v. Medearis, 451 F.3d 918, 920–21 (8th Cir. 2006), and the need for general deterrence is "especially compelling in the context of officials abusing their power," United States v. Boone, 110 F. Supp. 3d 909, 919 (S.D. Iowa 2015) (citing United States v. McQueen, 727 F.3d 1144 (11th Cir. 2013) and United States v. Hooper, 566 F. App'x 771 (11th Cir. 2014) (unpublished)). That is because excessive force "may easily go undetected and unpunished," so in the rare instance that it is ferreted out, the interest in general deterrence requires that a strong message be sent to would-be violators. McQueen, 727 F.3d at 1158–59 (emphasizing that "[t]he ability to unearth these crimes by law enforcement officers . . . is particularly difficult, and, as we see it, the extraordinarily lenient sentences in this case sap the goal of general deterrence."); see also United States v. Ronda, 455 F.3d 1273, 1302 (11th Cir. 2006) ("[T]he sentences imposed should serve to deter against future criminal activity by these defendants as well as by others similarly situated who may be tempted to violate the law and their oath of office to protect themselves or their fellow officers from possible state or federal criminal investigations."); Hooper, 566 F. App'x at 773 (reversing district court's downward variance in part because it failed to factor in "the need for [Defendant's] sentence to adequately deter other police officers from using excessive force"). As one district court put it, "Even if [the defendant-officer] will likely never violate another person's constitutional rights, a serious sentence on sends a message to all law enforcement officers to not abuse their positions." United States v. Rodella, No. CR 14-2783 JB, 2015 WL 711941, at *51 (D.N.M. Feb. 5, 2015) (unpublished) (sentencing police officer to 121 months of imprisonment for civil rights violation).

10

The requested Guideline sentence in this case would send a strong message to police officers that if they abuse their authority, they will not get special treatment or a slap on the wrist.

Fourth and finally, a Guideline sentence of 87 months of imprisonment would promote sentence uniformity by aligning Defendant Palkowitsch's sentence with the sentences of similarly situated law enforcement officers convicted of civil rights violations in this circuit. The United States is aware of four cases in this circuit in which an officer was convicted, after a jury trial, of using excessive force: United States v. Boone, 110 F. Supp. 3d 909, 916 (S.D. Iowa 2015), aff'd 828 F.3d 705 (8th Cir. 2016), United States v. Dautovic, Case No. 4:11-cr-159, Doc. No. 127 (S.D. Iowa 2012), rev'd 763 F.3d 927 (8th Cir. 2014), United States v. Wilson, 686 F.3d 868, 869 (8th Cir. 2012), and United States v. Miller, Case No. 4:04-cr-183, Doc. No. 82 (E.D. Ark. 2006), aff'd 477 F.3d 644, 646 (8th Cir. 2007).

The Boone case is particularly instructive because its facts are remarkably similar to this one. In that case, like this one, the defendant-officer responded to an arrest-in-progress in which a suspect was on the ground and non-compliant but was not actively resisting. Boone, 110 F. Supp. 3d at 911–12. In that case, like this one, the defendant-officer kicked the suspect with his boot, inflicting serious injuries. Id. In that case, like this one, the defendant-officer bragged about it afterwards, boasting to his girlfriend later that night, which led her to post on Facebook, "So you want to fight with police and you're surprised when you get your ass kicked? Welcome to Des Moines, where law enforcement wears steel toes." United States v. Boone, Case No. 4:13-cr-139, Doc. Nos. 174–78 (S.D. Iowa 2015).

11

Presented with those facts, the district court in <u>Boone</u> imposed a Guidelines sentence of 63 months of imprisonment,[1] factoring in the "seriousness of section 242 crimes," the need for general deterrence in this context, the collateral impact of the crime, and Boone's "brazen disrespect for the law." <u>Boone</u>, 110 F. Supp. 3d at 917 ("The seriousness of section 242 crimes simply cannot be understated, as they harm far more than individual victims; society as a whole is harmed when those entrusted to protect the public and enforce the laws turn to lawlessness themselves."); <u>Id.</u> ("[T]he specific facts of this case are troubling, particularly in that Defendant committed the act in front of his fellow officers, showing a brazen disrespect for the law. Defendant's act, although only a single kick, caused serious injury to Hill, and was potentially deadly."); <u>Id.</u> ("[T]he offense damages the reputation of police officers generally, and specifically the Des Moines Police Department and 'impugns the credibility and work of the hundreds of upstanding officers who serve with the department.'"); <u>Id.</u> at 919 ("[T]he Court considers deterrence, especially general deterrence, to be particularly important in this case."). On appeal, the Eighth Circuit affirmed the defendant's conviction and sentence. <u>United States v. Boone</u>, 828 F.3d 705 (8th Cir. 2016).

Another analogous case to this one is the prosecution of Arkansas correctional officer Jody Ray Miller for his use of excessive force against two inmates who mouthed off to him. In the first incident, Miller pinned the prisoner to the wall, punched him in the head, and then, after the prisoner fell to the floor, Miller, who was wearing boots, kicked and stomped on him. <u>Miller</u>, 477 F.3d at 646. In the second incident, Miller, who was wearing boots, kicked a handcuffed inmate in the head and body. <u>Id.</u> at 646–47. The district court, in an oral ruling unaccompanied by a statement of reasons, sentenced Miller to 78 months of imprisonment, and the Eighth

---

[1] The parties in <u>Boone</u> did not litigate, and the district court did not consider, the application of the dangerous weapon enhancement for Boone's shod foot, which he used to kick the victim. Had that four-level enhancement been applied, Boone's Guideline range would have been 97–121 months of imprisonment.

Circuit affirmed his conviction and sentence. United States v. Miller, Case No. 4:04-cr-183, Doc. No. 82 (E.D. Ark. 2006), aff'd 477 F.3d 644, 646 (8th Cir. 2007).

The third analogous in-circuit case is the excessive force prosecution of Missouri correctional officer Vernon Wilson, who was convicted of assaulting four inmates over the course of five months. The assaults traced a similar pattern: an inmate would talk back to Wilson or one of his subordinates, and Wilson would retaliate by assaulting the inmate or by directing other officers or inmates to assault the inmate. Wilson, 686 F.3d at 870–71. The district court, in an oral ruling unaccompanied by a statement of reasons, sentenced Miller to 120 months of imprisonment, and the Eighth Circuit affirmed his conviction and sentence. United States v. Wilson, Case No. 4:10-cr-390, Doc. No. 95 (E.D. Mo. 2011), aff'd 686 F.3d 868, 869 (8th Cir. 2012).

The fourth and final analogous in-circuit case is the excessive-force prosecution of Iowa police officer Mersed Dautovic. In that case, defendant-officer Dautovic was responding to a call for service in his police cruiser with his partner when another vehicle cut them off. Dautovic, 763 F.3d at 929. Dautovic, furious, activated his lights and siren, pulled over the vehicle, and then he and his partner assaulted the occupants. Id. at 929–31. A jury convicted Dautovic of excessive force and obstruction of justice, and the district court calculated his Guideline range to be 135–168 months of imprisonment, in light of enhancements for his use of a dangerous weapon, his infliction of serious bodily injury, his physical restraint of the victims, his abuse of authority, and his obstruction of justice. Id. at 931–32. Despite concluding that Dautovic "show[ed] no remorse for what [he had] done," the district court varied downward 115 months from his Guideline range and imposed a sentence of 20 months of imprisonment. Id. at 932.

On appeal, the Eighth Circuit concluded that the district court's non-Guideline sentence was "unreasonably lenient" under the circumstances, reasoning that:

13

> Dautovic's offense conduct was egregious. A police officer beat an innocent victim with a dangerous weapon, causing serious bodily injury and permanent physical damage. He arrested Bonds and Evans and then wrote a false police report that caused them to be charged with crimes. At Bonds and Evans's trial, where they were found innocent, Dautovic committed perjury. Dautovic maintained throughout his trial that his actions in the early morning hours of September 13 were reasonable and that his police report was sloppy, not intentionally falsified. A jury, however, found him guilty beyond a reasonable doubt of using excessive force and obstructing justice, and the district court's findings at sentencing were consistent with the jury's verdict. The district court found that Dautovic showed no remorse. . . . Dautovic's offense conduct involved aggravating circumstances, including the use of a dangerous weapon, the physical restraint of Bonds during the course of the beating, and the infliction of serious injury. Moreover, acting under the color of law, Dautovic tried to conceal his wrongdoing by falsifying a police report and lying under oath.

United States v. Dautovic, 763 F.3d 927, 934–35 (8th Cir. 2014). For all of those reasons, the Eighth Circuit vacated Dautovic's sentence, deeming it substantively unreasonable, and remanded to the district court for re-sentencing. Id. at 936.

With those data points in mind, a Guideline sentence of 87 months of imprisonment for Defendant Palkowitsch would promote sentence uniformity by aligning his sentence with the Guideline sentences imposed in the similar excessive force prosecutions of Boone, Miller, and Wilson. A Guideline sentence in this case would likewise accord with the Eighth Circuit's guidance in Dautovic that a downward variance resulting in an "unreasonably lenient" sentence would be inappropriate given the "egregious" conduct at issue in that case and in this one: a police officer assaulting "an innocent victim," inflicting "serious bodily injury and permanent physical damage," and attempting "to conceal his wrongdoing by falsifying a police report and lying under oath." Dautovic, 763 F.3d at 934–35.

V.     **RESTITUTION**

Restitution is mandatory in this case because the offense of conviction is a "crime of violence" and because "an identifiable victim . . . has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(a)(1), (c).  The "order of restitution shall require," in the case of an offense resulting in bodily injury to a victim, that the defendant reimburse the victim for (1) "the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care," (2) "the cost of necessary physical and occupational therapy and rehabilitation," (3) "income lost by such victim as a result of such offense," and (4) "lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(2), (4).

The United States has informed Mr. Baker, both in person and via written notice, that he has the right to attend the sentencing hearing, to give a victim-impact statement, and to seek restitution if applicable.  To date, Mr. Baker has not made a restitution request or submitted any supporting documentation.  If Mr. Baker elects to seek restitution, the United States will work with Mr. Baker to identify reimbursable costs and income and to provide documentation to the Court.  If Mr. Baker's losses are not ascertainable 10 days prior to sentencing, the United States will inform the Court, pursuant to 18 U.S.C. § 3664(d)(5), and the Court may schedule a hearing, after the sentencing, to issue a final restitution order.

## VI. CONCLUSION

For all of the reasons set forth in this sentencing memorandum, the United States respectfully submits that a sentence of 87 months of imprisonment for Defendant Palkowitsch is sufficient, but not greater than necessary, to promote the purposes of sentencing.

Respectfully submitted,

UNITED STATES OF AMERICA, by

ERIC S. DREIBAND
ASSISTANT ATTORNEY GENERAL

/s/ Christopher J. Perras
Christopher J. Perras, MA BN 682002
Special Litigation Counsel
Civil Rights Division
Department of Justice
150 M Street, NE
Washington, DC 20002
Telephone: (202) 353-5939
E-mail: christopher.perras@usdoj.gov


/s/ Zachary Dembo
Zachary Dembo, KY BN 95019
Trial Attorney
Civil Rights Division
Department of Justice
150 M Street, NE
Washington, DC 20002
Telephone: (202) 305-6846
E-mail: zachary.dembo@usdoj.gov