RECEIVED BY MAIL
JUL 0 1 2024
CLERK, U.S. DISTRICT COURT
ST. PAUL, MN

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>vs.<br><br>Brett Palkowitsch,<br><br>    Defendant. | Court File No. 19-cr-00013<br><br>**MOTION FOR REDUCTION IN SENTENCE PURSUANT TO 18 U.S.C. § 3582 (c)(1)(A) AND U.S.S.G. § 1B1.13 (b) (5)** |

COMES NOW, Defendant, Brett Palkowitsch, moves this court for entry of an order reducing his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13(b)(5). In support of his motion, he offers the following information:

1. On March 1, 2024, the Defendant made his request to the warden of the federal correctional institution where he is housed, asking for the bureau of prisons to move this court for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13(b)(5) for the same reasons set forth in this motion.

2. It has been more than 30 days since the Defendant made his RIS request to the warden. See Exhibit A.

3. The Defendant was indicted on January 16, 2019, and made his initial appearance before this Court on January 31, 2019. He was released on



1

personal recognizance bond. ECF. No. 5.

4. The Defendant remained on bond subject to its conditions of release until he self-surrendered on June 21, 2021, to serve the 72-month sentence imposed by this Court on May 21, 2021. ECF. No. 181.

5. Confined at FCI Ashland, Kentucky, the Defendant thereafter received from his Unit Team the Bureau of Prisons (BOP) Sentence Monitoring and Computation reflecting 842 days of jail credit. See Exhibit B.

6. The Defendant spoke with his wife, Stephanie Palkowitsch, during her next prison visit, asking her to speak with his lawyer about the 842 days in light of the information he had received from his Unit Team, to confirm whether or not the 842 days was related to Covid-19 CARES Act authorities that Congress granted BOP, to find out if he and his family could rely on the 842 days of custody credit against his 72-month prison sentence.

7. The Defendant's wife spoke with his lawyer who told her that he would look into the matter. After some time, the lawyer informed her that he had spoken with three difference BOP offices, all of whom confirmed that the BOP had authorization under CARES Act and that the 842 days were valid credits against the Defendant's sentence. See Exhibit C.

8. The Defendant was released from FCI Ashland on May 2, 2023, pursuant to a release date computed by BOP and confirmed by his Unit Team, the warden's office, BOP Regional Office, BOP Designation and Sentence Computation

Center, and the BOP RCC and halfway house, a release date that included the 842 days of credit.

9. The Defendant arrived at the halfway house and was immediately transferred to home the same day. By May 31, 2023, he was released from home confinement to begin serving his three-year term of supervised release. See Exhibit C.

10. BOP had returned him to his wife and two sons, Zach and Jon, age 10 and 8 respectively. His wife and boys were extremely happy and relieved to have him home again. He was reunited with his other family members as well, his mother and siblings, and his friends and members of his community. He secured a full-time job at Revolution Sports set to start on July 10, 2023. He spent all of his time with his wife and sons and the rest of his family. His sisters and their families were over frequently and he reconnected with everyone and began reestablishing himself as a father, husband, son, brother, friend, and valuable member of his community. See Exhibit C.

11. Having been transferred from home confinement to supervised release since May 31, 2023, it was a shock to be informed on Sunday, June 25th, while having dinner with his wife and kids that he would be going back to prison. His probation officer called that evening saying that "they had been a mistake" and that he would be serving another two years. See Exhibit C.

12. He told his wife and their two young boys. Everyone was horrified as he

explained that he was to wait for another call from his probation officer the following morning. At about 11:00 a.m. on June 26, 2023, he received that call. The P.O. told him that it had been worked out form him to finish his sentence on home confinement. She had him download the home confinement tracking app onto his phone. She had him sign the home confinement agreement paperwork. Relieved, he told his wife and kids that he was not returning to prison after all. They were calmed by the news, beginning to recover from the stress and pain of the phone call of the night before, but later in the day another call came in. See Exhibit C.

13. Mid-to late-afternoon, a caller identifying herself as Karen from the BOP offices in Minneapolis, informed the Defendant that he must self-surrender that evening or she would send the U.S. Marshalls to arrest him. He told her that he had been approved to serve the remainder of his sentence on home confinement. She told him that he home confinement agreement had been revoked. He asked if he could have overnight to explain it to his wife and children. She agreed that he had until noon the following day to turn himself in. See Exhibit C.

14. The Defendant's reincarceration has left his wife and children devastated. Both of his sons have suffered extreme trauma due to the Defendant's reincarceration and counseling has been necessary to help cope. The children have a hard time believing that the Defendant will ever return home again.

See S. Palkowitsch Aff.

15. Ms. Palkowitsch has also started therapy since the Defendant was reincarcerated. Mrs. Palkowitsch has been forced to work four jobs to maintain the household which only allows her to see her children three or four days a week. She is overwhelmed with financial and emotional stress. See S. Palkowitsch Aff.

16. Mrs. Palkowitsch made plans around a specific release date. When the Defendant was reincarcerated without any notice, she was unable to prepare for the situation mentally or financially. See S. Palkowitsch Aff.

17. Mrs. Palkowitsch and her children are only able to see the Defendant about three months because of the unplanned reincarceration and the expenses associated with traveling to see him. The visits require Ms. Palkowitsch to purchase air fare, rental car, and hotel and it has depleted their savins and put their family in a terrible financial place. See S. Palkowitsch Aff.

18. The Defendant self-surrendered on June 27, 2023, and was eventually returned to FCI Ashland. Since returning, he has been unable to get answers to his questions about what the BOP did to his family, to his wife and children. He has not even been able to get his FSA earned time credits back that were taken from him for the period of time that he was released and in transit back to FSI Ashland. See Exhibit C.

19. The actions of the BOP were unreasonable and capricious, and caused great

emotional distress and harm to the Defendant's wife and children as well as to his mother and other family members. See Exhibit C.

20. The Defendant did not learn until alter that BOP did indeed have the authority under the CARES Act to release him to home confinement at the time that they prepared his paperwork for his release in the spring of 2023. However, since June 26, 2023, he has been told that it was a "mistake" that he was release, even though it was approved by every check-and-balance within BOP before he was released.

21. The Defendant has been a model inmate, with no disciplinary infractions, no management issues, and no problems with programming. He has worked full-time for the prison continuously, earning excellent evaluations from his BOP supervisors. Upon his return to FCI Ashland, he was immediately rehired to the highly coveted Commissary inmate work detail where he continued to work with high marks from staff and coworkers alike. See Exhibit D.

22. BOP has further violated its obligations to the Defendant and his family by failing to follow the First Step Act statutes that require it to allow eligible federal inmates to earn anti-recidivism time credits from the date of the sentencing order and continuously until released from home confinement. The Defendant is eligible for FSA earned time credits and his PATTERN score reveals that the Department of Justice has determined that he has a minimal risk of recidivism. As such, he is currently earning 15 days FSA

time credits every 30 days. If BOP applied the law correctly, the Defendant would be required to serve 56.6% of his sentence in prison and the balance on home confinement. Yet, BOP is excluding the Defendant's time in transit and time at liberty, together with its unreasonable and capricious refusal to award 15 days for every 30 days until it completes two assessments after unreasonable delays and then not retroactively.

23. Attached as Exhibit E are letters in support of this Motion.

For the foregoing reasons, the Defendant respectfully moves this Court to entry of an Order reducing the Defendant's sentence to time served.

Dated: June 25, 2024

Brett Palkowitsch
Defendant
21818-041
FCI Ashland
Federal Correctional Institution
P.O. Box 6001
Ashland, KY 41105